1
2
3
4                       UNITED STATES DISTRICT COURT
5                      NORTHERN DISTRICT OF CALIFORNIA
6
7   WILLIE J.,                              Case No.  20-cv-07846-JSC
8              Plaintiff,
                                            **ORDER RE: CROSS-MOTIONS FOR**
9        v.                                 **SUMMARY JUDGMENT**
10  KILOLO KIJAKAZI,                         Re: Dkt. Nos. 16, 19
11             Defendant.
12
13          Plaintiff seeks Social Security benefits for a combination of physical and mental
14  impairments.[1]  (Administrative Record ("AR") 17-19, 58-59, 229.)  Pursuant to 42 U.S.C. §
15  405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of
16  Social Security denying his benefits claim.  After carefully considering the parties' cross-motions
17  for summary judgment, (Dkt. Nos. 16, 19), the Court concludes that oral argument is unnecessary,
18  *see* N.D. Cal. Civ. L.R. 7-1(b), GRANTS Plaintiff's motion, DENIES Defendant's cross-motion,
19  and REMANDS for further proceedings.  Because the ALJ erred in evaluating the medical
20  evidence as to Plaintiff's mental impairments, but there are outstanding issues to be resolved
21  before a disability determination can be made, remand for further proceedings is proper.
22                              **BACKGROUND**
23  **A.  Procedural History**
24          Plaintiff applied for disability benefits under Title XVI of the Social Security Act on
25  September 26, 2018.[2]  (AR 15.)  His application was denied both initially and on reconsideration.
26
27  _____
    [1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. §
28  636(c).  (Dkt. Nos. 3, 10.)
    [2] The disability onset date was amended from May 1, 2018 to September 26, 2018.  (AR 15, 32-

1    (AR 15, 58-70, 72-87.)  Plaintiff then requested a hearing before an administrative law judge

2    ("ALJ") and a hearing was held in February 2020.  (AR 15.)  The ALJ's decision found that

3    Plaintiff is not disabled.  (AR 12-27.)

4        At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

5    activity since September 26, 2018 (the application date).  (AR 17.)  At step two, the ALJ found

6    that Plaintiff's hernia with repair was a severe medically determinable impairment that

7    significantly limited his ability to perform basic work activities.  (AR 17.)  The ALJ found that the

8    other impairments Plaintiff alleged were either not medically determinable (testicular cancer, back

9    impairment, hand impairment) or were not severe (depressive disorder).  (AR 17-19.)  At step

10   three, the ALJ found that the severe medically determinable impairment did not meet or medically

11   equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 19.)  At step four,

12   the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium

13   work with limitations.  (AR 19-21.)  At step five, the ALJ found that Plaintiff had no past relevant

14   work; was an individual of advanced age; had a high school education; and was able to

15   communicate in English.  (AR 21.)  The ALJ concluded that Plaintiff could perform jobs that exist

16   in significant numbers in the national economy and, thus, is not disabled.  (AR 21-22.)

17       Plaintiff requested review by the Appeals Council, which was denied.  (AR 1, 170.)

18   Plaintiff then sought review in this Court.  (Dkt. No. 1.)  In accordance with Civil Local Rule 16-

19   5, the parties filed cross-motions for summary judgment.  (Dkt. Nos. 16, 19.)

20   **B.  Issues for Review**

21       1.  Did the ALJ err in determining Plaintiff's severe impairments?

22          a.  Did the ALJ err in evaluating the medical evidence?

23          b.  Did the ALJ err in evaluating Plaintiff's statements?

24       2.  Did the ALJ err in determining Plaintiff is not disabled at step three?

25       3.  Is the ALJ's RFC finding supported by substantial evidence?

26       4.  Did the ALJ err in determining Plaintiff is not disabled at step five?

27

28   33, 172.)

1    5.   Should the Court remand for payment of benefits or further proceedings?

2                                    **LEGAL STANDARD**

3        A claimant is considered "disabled" under the Social Security Act if he meets two

4    requirements.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

5    First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by

6    reason of any medically determinable physical or mental impairment which can be expected to

7    result in death or which has lasted or can be expected to last for a continuous period of not less

8    than 12 months."  42 U.S.C. § 423(d)(1)(A).  Second, the impairment or impairments must be

9    severe enough that he is unable to do his previous work and cannot, based on his age, education,

10   and work experience, "engage in any other kind of substantial gainful work which exists in the

11   national economy."  *Id*. § 423(d)(2)(A).  To determine whether a claimant is disabled, an ALJ is

12   required to employ a five-step sequential analysis, examining: (1) whether the claimant is

13   engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically

14   determinable physical or mental impairment" or combination of impairments that has lasted for

15   more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the

16   regulations; (4) whether, upon determining the claimant's RFC, he can still do his "past relevant

17   work"; and (5) whether the claimant "can make an adjustment to other work."  *Molina v. Astrue*,

18   674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; *see* 20 C.F.R. §

19   416.920(a).

20                                      **DISCUSSION**

21   **I.    Medical Evidence**

22       In assessing medical opinion evidence, Ninth Circuit courts must "distinguish among the

23   opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2)

24   those who examine but do not treat the claimant (examining physicians); and (3) those who neither

25   examine nor treat the claimant (non[-]examining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830

26   (9th Cir. 1995).  A treating physician's opinion is entitled to more weight than that of an

27   examining physician, and an examining physician's opinion is entitled to more weight than that of

28   a non-examining physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  If a treating

United States District Court
Northern District of California

                                              3

doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) (citation omitted). And "[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (citation omitted). Likewise, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31.

For benefits applications filed after March 27, 2017, such as this one, the Social Security Administration's Regulations and several Social Security Rulings regarding the evaluation of medical evidence have been amended, including SSR 96-2p ("Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions").  "The new regulations provide that the Commissioner will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *V.W. v. Comm'r of Soc. Sec.*, No. 18-cv-07297-JCS, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020).  "Instead, the Commissioner will evaluate the persuasiveness of all medical opinions based on (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as 'evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.'" *P.H. v. Saul*, No. 19-CV-04800-VKD, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (quoting 20 C.F.R. 20 C.F.R. § 404.1520c(a), (c)(1)-(5), § 416.920c(a), (c)(1)-(5)).  "The two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that 'form the foundation of the current treating source rule.'" *V.W.*, 2020 WL 1505716 at *13 (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853).

### A.    Mental Impairments

At step two, the ALJ found that Plaintiff had no severe medically determinable mental impairments.  With respect to mental impairments, the ALJ found the opinions of Dr. Hawkins (a non-examining physician) and Dr. Dixit (an examining physician) persuasive, but the opinion of

Dr. Sakhai (a treating physician) unpersuasive.  (AR 19.)  Dr. Hawkins found "marked limitations of depression related to physical conditions," but concluded that Plaintiff had no severe mental impairment because his physical health problems were expected to resolve.  (AR 81, 19.)  Dr. Dixit assessed Plaintiff as situationally depressed with unimpaired ability to follow instructions and work with supervisors or co-workers, although mildly impaired ability to work with the public.  (AR 480, 19.)  By contrast, Dr. Sakhai assessed Plaintiff as depressed with severely impaired ability to maintain regular work.  (AR 413-17, 19.)

Plaintiff contends that the ALJ erred by weighing the opinions of Drs. Hawkins and Dixit over that of Dr. Sakhai.  While the new Social Security "regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'"  *Christopher Charles A. v. Comm'r of Soc. Sec.*, No. C19-5914-MLP, 2020 WL 916181, at *2 (W.D. Wash. Feb. 26, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)(1), § 416.920c(a), (b)(1)).  "Further, the ALJ is required to specifically address the two most important factors, supportability and consistency."  *V.W.*, 2020 WL 1505716 at *14 (citing 20 C.F.R. § 416.920c(b)(2)).

The ALJ did not meet these requirements.  First, the ALJ's boilerplate statement that Dr. Hawkins and Dr. Dixit's opinions are "consistent with the finding at the consultative evaluation, mental status findings in the physical examinations, and counseling notes showing improved symptoms" does not adequately explain the basis for that conclusion.  (AR 19); *see Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").  Moreover, the "consultative evaluation" would seem to refer to either Dr. Hawkins or Dr. Dixit's own evaluation.  While each doctor's opinion might be made more persuasive if the ALJ explained with particularity how it is consistent with the other's, the doctor's own opinion cannot add persuasive value.

Second, the ALJ did not analyze supportability in view of the doctors' varying levels of

United States District Court
Northern District of California

5

1   interaction with and familiarity with Plaintiff.  Dr. Dixit examined Plaintiff once and, indeed,

2   noted that her own evaluation was "limited in scope . . . based on only one session of client

3   contact, in a structured environment, with pre-authorized tests.  Background and correlative

4   information was considered to be limited."  (AR 480.)  Dr. Hawkins did not examine Plaintiff at

5   all.  Dr. Sakhai, on the other hand, treated Plaintiff's mental health issues for 20 sessions, each an

6   hour long, over five to seven months.  (AR 407-39 (indicating treatment plan started in May 2019

7   and providing treatment notes between July and November 2019).)  The ALJ's explanation did not

8   address why, given that variance, Dr. Sakhai's opinion is less supportable than the opinions of

9   Drs. Dixit and Hawkins.

10          Third, the ALJ's explanation misstates the evidence.  The ALJ stated that Plaintiff's

11   "counseling notes show[ed] improved symptoms," (AR 19), but Dr. Sakhai's counseling notes

12   show consistent severe depression from July to November 2019.  (AR 436 (July 2019: "[C]rying

13   spells and depressed mood, at a debilitating level, most of the days during the last week."), 432

14   (August 2019: "[D]own and depressed most of the days throughout the week."), 430 (August

15   2019: "[D]epressed mood and frequent crying spells most of the days throughout the week."), 426

16   (September 2019: "[D]eeply sad and has periods of tearfulness on an almost daily basis."), 424

17   (November 2019: "[D]epressed mood and frequent crying spells all the way through the last

18   week.").)  The notes show that Plaintiff tended to improve over the course of a counseling session,

19   but not overall over the course of months.  (*E.g.*, AR 418 ("Patient felt that he was much more

20   capable of handling his depression after the session."), 419 ("He became less apathetic by the end

21   of the session."), 436 ("[R]eported diminished depressive mood after the session.").)  At the end of

22   November 2019, he continued to report "severe depressed mood that is increasing day by day and

23   has reached an alarming level since the surgery he had to go through."  (AR 418.)  In his

24   evaluation, Dr. Sakhai wrote, "These symptoms have been intensified recently because of

25   [Plaintiff's] pains that were the result of his unsuccessful surgery."  (AR 413.)  This evaluation is

26   consistent with Plaintiff's hearing testimony that his depression is related to his physical pain; he

27   consistently struggles with wondering "am I going to have to deal with this for the rest of my life

28   of just being in pain like this and why.  What can I do that will make this go away?"  (AR 47.)

United States District Court
Northern District of California

1    Finally, the ALJ did not adequately explain why Dr. Sakhai's opinion is inconsistent with

2    Plaintiff's ability to "live independently, perform household chores, go shopping, use public

3    transportation and participate in church activities."  (AR 19.)  According to Dr. Sakhai's

4    evaluation, Plaintiff's "financial situation deteriorate[ed] due to inability to work, forcing him to

5    live on the streets."  (AR 413.)  His "chronic pain and inability to earn a living," in turn,

6    contributed to his depression.  (AR 414.)  At the time of the hearing, Plaintiff was in an

7    independent living arrangement that was coming to an end and he was "going to be homeless."

8    (AR 37, 41-42.)  As to his typical activities, the record indicates that Plaintiff could go to the store,

9    wash dishes, do laundry, take out the trash, use public transportation, make "a simple microwave

10    meal," watch TV, take naps, and ride around the community with his pastor and church members

11    with whom he is comfortable.  (AR 479, 42-43.)  It is not obvious why these activities are

12    inconsistent with Dr. Sakhai's opinion that, overall, Plaintiff is severely depressed, anxious, and

13    impaired in his ability to concentrate.  (AR 413-17.)  Thus, the ALJ did not "articulate how [he]

14    considered the medical opinions and how persuasive [he] find[s]" them in light of Plaintiff's

15    typical activities.  *Christopher Charles A.*, 2020 WL 916181, at *2 (internal quotation marks and

16    citation omitted).

17    Accordingly, the ALJ erred in weighing the medical opinion evidence as to Plaintiff's

18    mental impairments.

19    * * *

20    Because the ALJ's analysis of the medical evidence at step two is not supported by

21    substantial evidence, the decision cannot stand.  Given this, the Court need not consider Plaintiff's

22    related additional arguments that the ALJ erred in evaluating Plaintiff's statements, in determining

23    that Plaintiff is not disabled at step three, in determining Plaintiff's RFC, and in determining that

24    Plaintiff is not disabled at step five.  The ALJ's errors here go to the heart of the disability

25    determination and are not harmless.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

26    1099 (9th Cir. 2014) ("An error is harmless if it is inconsequential to the ultimate nondisability

27    determination, or if the agency's path may reasonably be discerned . . . ." (internal quotation

28    marks and citations omitted)); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir.

United States District Court
Northern District of California

7

2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

## II.     Remand for Benefits or Further Proceedings

Plaintiff asks the Court to remand the case for the payment of benefits, or alternatively, for further proceedings.  When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to remand for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th. Cir. 2004) (citations omitted).   A remand for award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (citation omitted).

Here, the first prong of the test is not satisfied because the record has not been fully developed.  There are outstanding issues that must be resolved before a final determination can be made, given the Court's conclusion that the ALJ erred with respect to his weighing of the medical evidence, and in particular, his failure to explain why he weighed the evidence as he did.  The second prong of the test has been satisfied, as discussed above, because the ALJ gave legally insufficient reasons for discounting Dr. Sakhai's opinion.  The third prong, however, is not satisfied.  It is not clear from the record that the ALJ would be required to find Plaintiff disabled were the evidence properly credited, because the ALJ would need to first analyze whether Plaintiff's depression is a severe medically determinable impairment at step two, and whether his impairment meets or equals one of the listings in the regulations at step three.  Thus, on remand, in addition to properly weighing Dr. Sakhai's opinion, the ALJ must determine Plaintiff's severe medically determinable impairments proceed at least to step three of the five-step sequential analysis.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion for summary

United States District Court
Northern District of California

1  judgment, DENIES Defendant's cross-motion, and REMANDS to the Commissioner of Social

2  Security for further proceedings consistent with this Order.

3       This Order disposes of Docket Nos. 16 and 19.

4       **IT IS SO ORDERED.**

5  Dated: November 12, 2021

6

7

8  JACQUELINE SCOTT CORLEY
   United States Magistrate Judge

9

United States District Court
Northern District of California